IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, | ) ) ) ) | |
| KEVIN HAUGRUD, in his official capacity as the Acting Secretary of the U.S. Department of the Interior, | ) ) ) ) ) | |
| UNITED STATES FISH AND WILDLIFE SERVICE, and | ) ) ) | 17-cv-1130 ECF Case |
| JAMES KURTH, in his official capacity as the Acting Director of the U.S. Fish and Wildlife Service, | ) ) ) ) | |
| *Defendants.* | ) ) | |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

INTRODUCTION

1.      This lawsuit challenges a decision to halt required federal endangered species protections for the rusty patched bumble bee, a species currently facing an imminent risk of extinction. Defendant the U.S. Fish and Wildlife Service ("FWS") recognized the bee's "severe decline over the past 2.5 decades with no evident prospect of a natural reversal," and for this reason, designated the bee to be the first bumble bee species listed as endangered. In doing so, it remained "hopeful that, by

Page 1

affording the species protection now and working expeditiously with all partners,

the rusty patched bumble bee will be saved from extinction." Yet, less than a month

later, without valid explanation, opportunity for public input, or other legally

required process, FWS delayed the effective date of the listing, denying the bee the

essential protections of the law.

2.       Prior to the mid-1990s, the rusty patched bumble bee flourished in

twenty-eight states and two Canadian provinces. But the bee's population and

range have declined by approximately ninety percent in just the past twenty years.

FWS predicts that without intervention, the bee will be extinct in all but two

ecological regions within ten years and totally extinct within thirty years, even

under the most optimistic scenarios. According to FWS, despite voluntary

conservation measures, "the status of the species remains dire" and "even without

further exposure to stressors," the bee "may lack the resiliency required to sustain

populations into the future."

3.       On January 11, 2017, FWS published a final rule to list the bee as an

endangered species (the "Listing Rule"). 82 Fed. Reg. 3186. The rule states that it

was scheduled to take effect on February 10, 2017. *Id*. On February 9, 2017,

Defendants—the U.S Department of Interior ("DOI"), Kevin Haugrud, in his official

capacity as the Acting Secretary of DOI, FWS, and James Kurth, in his official

capacity as the Acting Director of FWS—announced a "final rule," without prior

notice or an opportunity for public comment, delaying the effective date of the

Listing Rule to March 21, 2017 (the "Delay Rule"). 82 Fed. Reg. 10285 (Feb. 10, 2017).

4.      This lawsuit challenges Defendants' promulgation of the Delay Rule, which constitutes an unlawful amendment of the Listing Rule, a final rule duly promulgated under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531.

5.      The Listing Rule was adopted and duly promulgated by Defendants in accordance with the ESA by the time it was published in the Federal Register. The Delay Rule, issued without any public process, violates the notice and comment requirements of the Administrative Procedure Act.

6.      Defendants' promulgation of the Delay Rule is also arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the Administrative Procedure Act.

7.      NRDC seeks an order vacating the Delay Rule.

PARTIES

8.      Plaintiff Natural Resources Defense Council is a national, non-profit environmental and public health organization with several hundred thousand members. NRDC engages in research, advocacy, media, and litigation related to protecting public health and the environment, including efforts to protect pollinators. NRDC's mission includes preventing harm to wildlife in general and endangered species in particular.

9.      NRDC members regularly observe, visit, and delight in the rusty patched bumble bee's presence in the wild. NRDC members intend to continue

doing so in the future. NRDC members derive scientific, educational, recreational, conservation, aesthetic, and other benefits from the existence of rusty patched bumble bees in the wild. These interests are and will be directly, adversely, and irreparably affected by Defendants' violation of the law. The Delay Rule imperils the continued existence of the rusty patched bumble bee by postponing substantive federal protections that are immediately necessary to ensure the bee's best prospects for survival. For example, upon the effective date of an endangered species listing, Section 9 of the ESA prevents any person from harming or harassing the listed species. In light of the rusty patched bumble bee's precipitous and continuing decline, these protections and others afforded by the ESA are urgently needed now—any delay may irreparably impair the bee's likelihood of survival. Accordingly, NRDC members will continue to be harmed by Defendants' unlawful actions until and unless this Court provides the relief prayed for in this Complaint.

10.    Defendant DOI is an agency of the United States Government and includes Defendant FWS. Among other functions, DOI is responsible for the administration of the ESA and is legally responsible for listing decisions for species such as the bee.

11.    Defendant Kevin Haugrud is sued in his official capacity as the Acting Secretary of the Interior. The Acting Secretary of the Interior is the federal official currently responsible for complying with the statutory requirements of the ESA for terrestrial and some aquatic species, including listing decisions for species such as the bee.

12.     Defendant FWS is an agency of the United States government, within and under the jurisdiction of DOI. Through delegation of authority from the Secretary, the FWS administers and implements the ESA and is also legally responsible for listing decisions for species such as the bee.

13.     Defendant James Kurth is sued in his official capacity as Acting Director of the FWS. As Acting Director, and through delegation of authority from the Secretary, Mr. Kurth is the FWS official currently responsible for implementing the ESA, including listing decisions for species such as the bee.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

15.     FWS's Delay Rule is a final agency action subject to judicial review. 5 U.S.C. §§ 702, 704, 706.

16.     This Court has the authority to issue the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02 and 5 U.S.C. §§ 702 and 706.

17.     The requested relief would redress the harm to plaintiff and its members caused by FWS's unlawful Delay Rule.

18.     Venue is proper in this district because plaintiff NRDC resides and has its principal place of business in this judicial district. 28 U.S.C. § 1391(c)(2), (e)(1).

STATUTORY AND REGULATORY FRAMEWORK

The Endangered Species Act

19.     Congress enacted the ESA in 1973 "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species . . . ." 16 U.S.C. § 1531(b). The Supreme Court has observed that "[t]he plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost," and that, under the act, "[it] intended endangered species to be afforded the highest of priorities." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 174, 184 (1978). As defined by the act, an endangered species is a species "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6).

20.     Section 4 of the ESA requires that the Secretary of the Interior "determine whether any species is an endangered species" and list those species determined to be endangered on the federal endangered species list. *Id*. § 1533(a)(1), (c)(1). These determinations must be made "solely on the basis of the best scientific and commercial data available." *Id*. § 1533(b)(1)(A).

21.     When a species is added to the endangered species list, it receives mandatory substantive protections. Among other things, the ESA makes it unlawful "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" any listed species. *Id*. §§ 1532(19), 1538(a)(1)(B). Federal agencies must also consult with the Secretary regarding "any action authorized, funded, or carried out

by such agency" to ensure that the action "is not likely to jeopardize the continued

existence of any endangered species . . . or result in the destruction or adverse

modification of habitat of such species which is determined by the Secretary . . . to

be critical." *Id*. § 1536(a)(2). Additionally, the Secretary is required to "develop and

implement" a "recovery plan[]" providing concrete action steps for "the conservation

and survival of the [listed endangered] species." *Id*. § 1533(f).

22.     Any interested person can begin the process for listing a species under

the Endangered Species Act by filing a petition with the Secretary. *Id*.

§ 1533(b)(3)(A); 50 C.F.R. § 424.14(a).

23.     Upon receipt of a petition to list a species, and to the maximum extent

practicable, the Secretary must make a finding within ninety days as to whether

the petition "presents substantial scientific or commercial information indicating

that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. §

424.14(h)(1).

24.     If the Secretary makes a ninety-day finding that the petitioned action

may be warranted, he must promptly publish it in the Federal Register and

commence a "review of the status" of the species. 16 U.S.C. § 1533(b)(3)(A).

25.     After issuing a positive ninety-day finding, the Secretary has twelve

months from the date that he receives the petition to make one of three findings: (1)

the petitioned action is not warranted; (2) the petitioned action is warranted; or (3)

the petitioned action is warranted but presently precluded by work on other

pending proposals for listing other species. 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. §
424.14(h)(2).

26.     If the Secretary finds that listing the species is warranted, he must
publish a proposed rule to list the species as endangered or threatened in the
Federal Register. *See* 16 U.S.C. § 1533(b)(5).

27.     Within one year of the publication of a proposed rule to list a species,
the Secretary must make a final decision on the proposal. *Id.* § 1533(b)(6)(A). This
period may be extended only upon a finding by the Secretary that "there is
substantial disagreement regarding the sufficiency or accuracy of the available
data relevant to the determination," and even then, the extension must be "for not
more than six months" and only "for purposes of soliciting additional data." *Id.* §
1533(b)(6)(B)(i).

The Administrative Procedure Act

28.     Under the Administrative Procedure Act ("APA"), an agency must
publish a notice of proposed rulemaking in the Federal Register and solicit public
comment before adopting or repealing a rule, unless the rule constitutes an
"interpretative rule[], general statement[] of policy, or rule[] of agency organization,
procedure, or practice" or the "agency "for good cause" finds that notice and
comment are "impracticable, unnecessary, or contrary to the public interest." 5
U.S.C. § 553. The APA defines "rule making" as the "agency process for
formulating, amending, or repealing a rule." *Id.* § 551(5). The APA defines "rule" to
include "the whole or a part of an agency statement of general or particular

applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4).

29.    Under the APA, a reviewing court shall "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A), or that is "without observance of procedure required by law," *id.* § 706(2)(D).

## FACTUAL BACKGROUND

30.    The rusty patched bumble bee—named for a small rust-colored patch on its back—is a native pollinating insect found predominantly in the northern Midwest and eastern United States.



*The rusty patched bumble bee.  Photo by the U.S. Geological Survey.*

31.     Bumble bees, including the rusty patched bumble bee, are among the country's most important pollinators because of their special ability to "buzz pollinate" certain crops that benefit from or require vibration to dislodge their pollen and facilitate fertilization. The rusty patched bumble bee is a generalist forager—known to pollinate up to sixty-five different species of plants—and an excellent pollinator of wildflowers, cranberries, plums, apples, and onion seed as well as alfalfa, an important food source for livestock such as rabbits, cattle, and horses.

32.     Historically, the rusty patched bumble bee was broadly distributed across the eastern United States (from Maine to Georgia) and upper Midwest (from Pennsylvania to North Dakota). In recent years, however, the species has undergone a dramatic contraction, disappearing from approximately ninety percent of its historical range. Scientists have identified several potential threats to the species' survival.

33.     Pathogens—such as fungi, viruses, bacteria, and parasites—are one significant potential cause of the precipitous decline. The fungus *Nosema bombi*, for example, is associated with the contemporaneous collapse of populations of commercially bred western bumble bees, and it is suspected that other common bee pathogens like deformed wing virus, acute bee paralysis virus, and parasites such as *Crithidia bombi* and *Apicystis bombi* may also afflict rusty patched bumble bee populations.

34.     Agricultural conversion, fire suppression, grazing, and urban development have also fragmented or destroyed large portions of the rusty patched bumble bee's habitat, depleting the number of viable nesting sites and the vital supply of pollen and nectar from native wildflowers. Fragmented habitat can additionally impair genetic diversity, as bees in isolated patches of habitat tend to inbreed, which can result in the production of sterile male bees and eventually the death of the affected population.

35.     Pesticides—particularly insecticides and herbicides—are another potential cause of decline, as they are widely used in agricultural, urban, and natural environments and can cause both lethal and sublethal harm to rusty patched bumble bees. A class of pesticides known as neonicotinoids are of particular concern because they are designed to be absorbed through a plant's vascular system, making the plant itself—including its pollen and nectar—toxic to bees. Neonicotinoids are currently among the most commonly employed insecticides worldwide and have been identified as one cause of the decline of many bee species, including the rusty patched bumble bee.

36.     Lastly, climate change may exacerbate existing threats to the rusty patched bumble bee by increasing pathogen pressure, decreasing resource availability, and intensifying variability in temperatures and precipitation. Climate change may also result in asynchrony between the bees and the plants they feed on. As certain regions experience warmer winters, bees may emerge earlier from

hibernation, and if their emergence is no longer synchronized with the flowering plants they feed on, they may suffer effects from malnourishment, or even starve.

37.     On January 31, 2013, the Xerces Society for Invertebrate Conservation ("Xerces") submitted a petition to the Secretary of the Interior and United States Department of the Interior to list the bee as an endangered species pursuant to the ESA (the "Petition"). The Petition outlined the threats to the species, including those threats described above. *See* Xerces, Petition to List the Rusty Patched Bumble Bee *Bombus affinis* (Cresson), 1863, as an Endangered Species Under the U.S. Endangered Species Act (Jan. 31, 2013), *available at* http://bit.ly/2kveGX1.

38.     On September 18, 2015, FWS published a ninety-day finding in response to the Petition, concluding "that the petition presents substantial scientific or commercial information indicating that the petitioned action [i.e. the listing of the species] may be warranted for the rusty patched bumble bee." 80 Fed. Reg. 56423, 56429.

39.     In June of 2016, FWS issued a final Species Status Assessment ("Assessment") Report for the bee. FWS, Rusty Patched Bumble Bee *(Bombus affinis)* Species Status Assessment: Final Report, Version 1 (Jun. 2016), *available at* http://bit.ly/2lyga2M [hereinafter FWS, Assessment Report].

40.     According to the FWS Assessment fact sheet, an Assessment is "a focused, repeatable, and rigorous scientific assessment" that relies upon a "compilation of the best available information" for a particular species. FWS, Species Status Assessment Framework 1, 2 (Aug. 2016), *available at*

http://bit.ly/2iLzQ2a. The purpose of an Assessment is to describe the "current condition of the species' habitat and demographics" and "forecast[] the species' response to probable future scenarios of environmental conditions and conservation efforts" in order to determine its likelihood of extinction. *Id.* at 2.

41.     The Assessment Report for the bee examined "three future risk scenarios"—a "[s]tatus [q]uo," a "[m]ost [l]ikely," and a "[b]etter-case" scenario. FWS, Assessment Report 3. Under all three scenarios, FWS predicted the bee would be completely extinct within thirty years, cautioning, however, that "[t]hese projections . . . are likely optimistic." *Id.* at 4.

42.     On September 22, 2016, Defendants published a proposed rule to list the bee as an endangered species under the ESA ("Proposed Rule"), stating that "[a]fter review of the best available scientific and commercial information, we find that listing the rusty patched bumble bee is warranted." 81 Fed. Reg. 65324, 65324.

43.     On January 11, 2017, FWS published the Listing Rule in the Federal Register "determin[ing] endangered species status under the [ESA] . . . for the rusty patched bumble bee." 82 Fed. Reg. 3186, 3186.

44.     Incorporating information from the Assessment and Proposed Rule, the Listing Rule states that "[s]ince the late 1990s, rusty patched bumble bee abundance and distribution has declined significantly," with an "88 percent decline from the number of populations documented prior to 2000" and "an 87-percent loss of spatial extent . . . within the [species'] historical range." *Id.* at 3188.

45.     The Listing Rule also states that out of the six ecoregions where the bee still remains "in four of the ecoregions, the probability of extirpation [i.e., extinction within the region] exceeds 90 percent within 10 years, and extirpation in the remaining ecoregions is greater than 90 percent by year 30." *Id*. at 3191.

46.     Accordingly, the Listing Rule reaffirms FWS's finding in the Proposed Rule that "the rusty patched bumble bee is presently in danger of extinction throughout its entire range" and that it "is an endangered species." *Id*. at 3205.

47.     President Trump was inaugurated at noon on Friday, January 20. Later that day, White House Chief of Staff Reince Priebus issued a "Memorandum for the Heads of Executive Departments and Agencies" ("Priebus Memorandum"). The Priebus Memorandum was published in the Federal Register on Tuesday, January 24. 82 Fed. Reg. 8346 (Jan. 24, 2017).

48.     Among other things, the Priebus Memorandum purports to direct agencies that have promulgated "regulations that have been published in the [Federal Register] but have not taken effect" to "temporarily postpone their effective date for 60 days from the date of th[e] memorandum." *Id*. The Priebus Memorandum further states that agencies should exclude from withdrawal "any regulations subject to statutory or judicial deadlines." *Id*.

49.     In response to the Priebus Memorandum, on February 10, 2017, Defendants published in the Federal Register the Delay Rule, delaying the effective date of the Listing Rule "from February 10, 2017, to March 21, 2017." 82 Fed. Reg.

at 10285. The Delay Rule was published without prior notice or the opportunity for public comment.

50. Defendants published this new final rule delaying the effective date of the Listing Rule even though the Priebus Memorandum by its terms did not apply to that rule, because the rule was subject to a statutory deadline contained in the ESA, 16 U.S.C. § 1533(b)(6), and a final decision was required within one year of the Proposed Rule.

## CLAIM FOR RELIEF

51. Plaintiff incorporates by reference all preceding paragraphs.

52. Defendants adopted the Listing Rule as authorized by law. *See* 5 U.S.C. § 552(a)(1)(D); 16 U.S.C. § 1533. The Listing Rule was duly promulgated by Defendants when the rule was published in the Federal Register, at the latest. *See* 44 U.S.C. § 1507.

53. Defendants published the Delay Rule and unlawfully amended the Listing Rule without publishing a notice of proposed rulemaking or providing an opportunity for public comment on the withdrawal, in violation of 5 U.S.C. § 553.

54. The Delay Rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A), and was published "without observance of procedure required by law," *id.* § 706(2)(D).

55. Defendants did not have good cause to disregard the notice and comment requirements of the APA when they published the Delay Rule and unlawfully amended the Listing Rule.

56.     The Delay Rule is not a rule of procedure under 5 U.S.C. § 553(b)(A).

57.     Neither the Priebus Memorandum nor any other authority provides a lawful basis for Defendants' publication of the Delay Rule and amendment of the Listing Rule without notice and comment.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment as follows:

A.     Declaring that Defendants' publication of the Delay Rule and unlawful amendment of the Listing Rule without advance notice or an opportunity for public comment violates the APA;

B.     Vacating FWS's Delay Rule and unlawful amendment of the Listing Rule;

C.     Awarding plaintiff its costs and reasonable attorneys' fees; and

D.     Granting such other relief that the Court considers just and proper.

Respectfully submitted this 14th day of February, 2017.


By:   */s/Margaret Hsieh*
Margaret Hsieh (NY Bar No. MH7821)
Natural Resources Defense Council
40 W. 20th St., 11th Fl.
New York, NY 10011
212-727-4652
mhsieh@nrdc.org

Rebecca J. Riley (IL Bar No. 6284356), *pro hac vice pending*
Daniel A. Raichel (IL Bar No. 5174164), *pro hac vice pending*
Natural Resources Defense Council
20 N. Wacker Drive, Suite 1600
Chicago, IL 60606312-651-7913
rriley@nrdc.org
draichel@nrdc.org